BLANCHE, Judge.
This appeal challenges, in part, the distribution of funds in a concursus proceeding brought under LSA-R.S. 9:2963.
On May 11,1976, W. D. Lloyd, Jr., filed a petition that presented to the court an agreement between B & B Supply, Inc. (hereinafter referred to as “B & B”), and Lloyd to sell in bulk the merchandise and inventory of B & B. The requisite notices to creditors informing them of the pending bulk sale were sent out requesting the creditors to come forward and assert any claims they may have had against B & B.
Borg Warner Acceptance Corporation (hereinafter referred to as “Borg-Warner”), which was financing the purchases of merchandise and inventory of B & B under a floor plan arrangement, was recognized as a preferred creditor and was awarded the full principal amount of its claim of $9,696.04. All of the other thirty creditors to respond to the proceeding shared in the distribution on a pro rata basis.
Appellant, Brister Corporation (hereinafter referred to as “Brister”), appeals the trial judge’s finding that the chattel mortgages held by Borg-Warner entitled them to preferred status. We affirm.
Appellant assigns as error the trial judge’s not finding:
(1) That a chattel mortgage creditor lost his preferred status as a result of the bulk sale to which he consents (citing R.S. 9:5354 as authority therefor).
(2) That Brister held a vendor’s lien and that said vendor’s lien primed Borg-Warner’s chattel mortgages.
(3) That granting of the floor plan chattel mortgage violated the Bulk Sales Act and hence was invalid.
(4) That the mortgage was ineffective for want of adequate description and improper form.
We find appellant’s first assignment of error to be wholly without merit. LSA-R.S. 9:5354 reads in its entirety:
“Every such mortgage shall be effective as against third persons from the time of filing in the proper offices, and the filing shall be notice to all parties of the existence of the mortgage, which shall be superior in rank to any privilege or preference arising subsequently thereto.
“Provided, however, that the holders of chattel mortgages on motor vehicles, chattels, property or merchandise of any nature or kind who expressly or impliedly consent to such chattels being placed on sale by the owner thereof in the state of Louisiana and in the usual course of business shall be precluded from asserting said mortgage or the lien created by it against bona fide retail purchasers in actual good faith of said motor vehicles, chattels, merchandise or property. Holders of such chattel mortgages shall be deemed to have impliedly consented to sales of the mortgaged property free and clear of such mortgages to bona fide retail purchasers in actual good faith whenever the mortgagor is a wholesaler, retailer or dealer duly licensed to sell the type of chattel or merchandise covered by the mortgage. Such consent may not be negatived or withheld by any express provision in the act or mortgage when the mortgagor holds such an occupational license. For purposes of this Section a bona fide retail purchaser in actual good faith shall be deemed to be any person, firm, partnership or corporation purchasing a motor vehicle, chattel or merchandise for individual or business use and not for resale from a licensed dealer, whole *550 saler or retailer, who does not in fact know of a chattel mortgage existing upon the property purchased; provided, however, that the holders of chattel mortgages on motor vehicles, chattels, property or merchandise of any nature or kind who expressly or impliedly consent to such chattels being placed on sale by the owner thereof in the usual course of business shall not be precluded from asserting said mortgage or the lien created by it against group or bulk purchasers whether said purchaser is in good faith or not. As amended Acts 1954, No. 481, § 1.” (Emphasis added)
The clear import of the above provision is to allow a retailer or wholesaler to obtain financing to purchase inventory, and then to be able to sell that inventory in the ordinary course of business free and clear of the mortgage. The last sentence makes it clear that the holder of a chattel mortgage does not lose the privilege when items are sold in bulk. We, therefore, reject appellant’s assignment of error number one.
Appellant next claims a vendor’s privilege and that said privilege primes the chattel mortgage of Borg-Warner. We need not reach the second assertion since we conclude from the record that Brister has no vendor’s privilege. The evidence shows that Brister advanced to B & B from January 1976 till March 1976 $28,000 in consideration for future purchases which Brister would make. Brister only purchased from B & B a total of $14,254.64 in goods, leaving a credit balance of $13,745.36 in its favor, the amount claimed in the proceedings below. By doing business in this fashion, Brister was able to secure discounts on its purchases.
The above facts do not entitle Brister to a vendor’s privilege since it never sold any goods to B & B. We, therefore, find appellant’s assignment of error number two to be without merit.
Appellant also claims that the granting of the floor plan chattel mortgage itself violated the Bulk Sales Act and, therefore, is invalid. Appellant cites Fidelity Credit Company v. Winkle, 251 La. 1, 202 So.2d 280 (1967), in support of this proposition. This claim is also without merit since Winkle was statutorily overruled by Act 110 of 1968 amending R.S. 9:2965 to read as follows:
“§ 2965. Transfers to which law applicable
“Transfers under this Part include transfers in payment of debt, in whole or in part, sales, exchanges and assignments, whether for cash or on credit or in exchange for certificates of stock, bonds or other obligations of a corporation, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the transferor, but nothing contained in this Part applies to transfers made by executors, administrators, receivers or assignees under voluntary assignments for the benefit of creditors, trustees in bankruptcy or sales under judicial process; and nothing contained in this Part applies to any mortgage, pledge, privilege, assignment or other security interests, made to give security for the performance of an obligation nor shall anything contained in this Part apply to transfers in settlement or payment in full, or in part of a mortgage, pledge, privilege, assignment or other security interests. Amended by Acts 1968, No. 110, § 1, eff. July 17, 1968, at 1:45 P.M.” (Emphasis added)
We, therefore, reject appellant’s assignment of error number three.
Lastly, appellant claims the mortgage was ineffective as to third parties for want of adequate description and improper form. The floor plan chattel mortgages submitted into evidence by Borg-Warner are valid on their face. The trial judge implicitly found that there was no fatal irregularity in their confection. Appellant has shown no error in this finding and, therefore, it will not be disturbed.
Regarding the descriptions, the place where the mortgaged goods were to be kept was specifically identified by street and number. No other creditor held a floor plan mortgage or a chattel mortgage of any *551 kind upon the inventory and merchandise of B & B. While there was a general floor plan mortgage in effect, items subject to the mortgage were listed by model and serial number as purchases were made with financing supplied by Borg-Warner. As best we can tell from the record, there was $9,696.04 worth of merchandise remaining on the premises of B & B which had been financed by Borg-Warner and which had been identified by model and serial number in the mortgage agreements.
We, therefore, find the descriptions contained in the mortgage agreements to be adequate to support a valid mortgage and reject appellant’s assignment of error number four.
For the above and foregoing reasons, the judgment of the trial court is affirmed, appellant to bear all costs of this appeal.
AFFIRMED.